FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 09, 2025

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DUSTIN B.,[1]<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,[2]<br><br>    Defendant. | No. 4:24-CV-05075-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted for Martin O'Malley as the defendant.

Due to depression attention-deficit/hyperactivity disorder (ADHD), depression, anxiety, and bilateral shoulder impingement syndrome, Plaintiff Dustin B. claims that he is unable to work full-time and applied for supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred in relying on flawed vocational expert (VE) testimony at step five; the ALJ improperly analyzed the opinions of examining source Nora K. Marks, PhD; and the ALJ improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In October 2018, Plaintiff filed an application for benefits under Title 16,[3] claiming disability beginning February 15, 2012, based on the physical and mental impairments noted above.[4] Plaintiff's claim was denied at the initial and reconsideration levels.[5] After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in November 2020, at which Plaintiff appeared with his representative.[6]  Plaintiff testified, as well as two medical experts and a

---

[3] AR 237-242. Plaintiff also filed a claim for benefits under Title 2, but the claim was previously remanded by this Court with regard to Title 16 claim only.

[4] AR 244-251, 281.

[5] AR 143, 152.

[6] AR 37-76.

vocational expert.[7]  After the hearing ALJ Palachuk issued a decision denying benefits.[8] Plaintiff filed for review of the ALJ decision, and the Appeals Council denied review in July 2021.[9] Plaintiff filed timely suit in this Court, and on July 22, 2022, this Court entered an order remanding the case as to the Title 16 claim for further proceedings.[10]  The Appeals Council issued a remand order consistent with the Court's order.[11]On January 31, 2024, ALJ Palahuck held a second telephone hearing, which was attended by Plaintiff's attorney and a vocational expert.[12] On April 8, 2024, ALJ Palachuk issued a second decision denying Title 16 benefits..[13]

The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[14] As to medical opinions, the ALJ found:

- The opinions of medical expert Nancy Winfrey, PhD, to be persuasive

---

[7] *Id.*

[8] AR 12-36.

[9]AR 1-6.

[10] AR 749-769.

[11] AR 770-774.

[12] AR 705-717.

[13] AR 681-704.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[14] AR 690-692.

- The opinions of medical expert Darius Ghazi, MD, to be generally persuasive.

- The opinions of William Drenguis, MD, to be somewhat persuasive.

- The opinions of state agency physicians Greg Saue, MD, and Debra Baylor, MD, to be unpersuasive.

- The opinions of state agency evaluators Kent Reade, PhD, and Shawn Horn, PsyD, to be persuasive.

- The opinions of Gordon Heich, DO, to be unpersuasive.

- The opinions of DSHS examining psychologist Nora Marks, PhD, to be unpersuasive.

- The opinions of Robert Whitson, MD, to be unpersuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 17, 2018, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: bilateral shoulder impingement, right greater than left; depressive disorder; generalized anxiety disorder; and ADHD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[15] AR 693-694.

listed impairments, and specifically considered Listing 1.18, 12.04, 120.06, and 12.11.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  [Plaintiff] could occasionally crawl and climb ladders, ropes, or scaffolds; he could never reach or lift above shoulder level with both upper extremities; he could occasionally raise or suspend the arms out in front in the waist to shoulder area; he would need to avoid concentrated exposure to hazards; he could understand, remember, and carry out simple, routine tasks; he needs a predictable environment with no more than occasional changes; he should not be required to perform assembly-line or fast paced work; and he could have brief, superficial interaction with the public.

- Step four: Plaintiff is unable to perform his past relevant work as a fish processing laborer and a short order cook.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a router (DOT 222.587-038), small products assembler (DOT 706.684-022), and electronic accessories assembler (DOT 729.687-010).[16]

Plaintiff timely requested review of the ALJ's decision by this Court.[17]

---

[16] AR 687–695.

[17] ECF No. 1.

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[18] and such error impacted the nondisability determination.[19] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

## III.     Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when evaluating the medical opinion of Dr. Marks, erred in

---

[18] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[19] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[20] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

assessing his subjective claims, and erred in accepting VE testimony regarding jobs at step five that was not based on the RFC which she ultimately formulated.    As is explained below, the Court concludes that the ALJ consequentially erred in her evaluation of Dr. Marks' opinion but did not err by relying on the VE testimony . Additionally, the Court finds the remaining issue moot.

**A.    Medical Opinion: Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred in her evaluation of Dr. Marks' 2018 opinions.[21] The Commissioner counter-argues that the ALJ properly considered that Dr. Marks' opinions were rendered before the relevant periods, that the opinions were on a "check-box form," that the 2018 opinions were made when Plaintiff was "admittedly using opioids and methamphetamine," and that other opinions were inconsistent with the opinions of Dr. Winfrey.

1.    Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[22] The factors for evaluating the persuasiveness of medical opinions and prior administrative

---

[21] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[22] 20 C.F.R. § 416.920c(a), (b).

medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[23] Supportability and consistency are the most important factors,[24] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[25] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[26] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[27]

---

[23] 20 C.F.R. § 416.920c(c)(1)–(5).

[24] *Id.* § 416.920c(b)(2).

[25] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[26] *Id.*

[27] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

1

2.    <u>Relevant Testimony</u>

2

a.    *<u>Plaintiff</u>*

3

On November 5, 2020, Plaintiff appeared to testify at his first hearing before

4

ALJ Marie Palachuk but he did not appear for the second hearing.[28] At the first

5

hearing before ALJ Palachuk, Plaintiff was asked if he had issues with his arms

6

and shoulders in the last couple years.[29] He said that he had quite a few issues

7

with his right, and his left arm hurt as well but improved after surgery.[30] He said

8

he could finish washing a sink of dishes but that it was be painful.[31] He said it

9

would be irritating within 10 to 15 minutes, but that he usually will "tough it out"

10

and that it affects his performance.[32] He said that when working at Shari's

11

restaurant he was a dishwasher and that he would not be able to do the job now

12

because he was there for less than 2 months and had to quit early a lot because of

13

pain.[33] He said he left because the job was physical and because he had a hard time

14

getting along with the manager and others there.[34] Plaintiff said he was never able

15

16

[28] AR 37-76, 705-717.

17

[29] AR 61.

18

[30] *Id.*

19

[31] AR 62.

20

[32] AR 63.

21

[33] AR 63-64.

22

[34] AR 64.

23

to keep a job for more than 6-8 months because he would work with pain but was not able to get along with others.[35]

Plaintiff said he has good days and bad days emotionally and that his feelings whether good or bad would be intense and he would get very excitable and not able to control himself.[36] He said he lived with his parents and tried to help around the house as much as he could.[37] He said on average he had 3 bad days a week in which he was feeling down and lacked energy and could not help as much.[38]

The ALJ asked Plaintiff about his work at Kanaway Seafood in 2006 and 2007.[39] He said it was a seafood processing plant and he was a salt operator, who turned the salt machine on and off.[40] He said that before that he worked for a seafood restaurant named Alaska Seafood as a line cook, making dinners and smaller meals.[41] He said it was a short order cook position.[42]

---

[35] AR 64-65.

[36] AR 65.

[37] AR 65-66.

[38] AR 66.

[39] AR 67.

[40] AR 68.

[41] AR 68-69.

[42] AR 69.

1

         b.    _Dr. Nancy Winfrey_

2    Dr. Winfrey stated that she reviewed Plaintiff's file and that the most

3    important record was a July 2015 record indicating "current meth use" in Exhibit

4    17F and that she was skeptical of the April 2014 diagnosis of ADHD and bipolar

5    disorder noted in Exhibit 14F given the meth use noted in Exhibit 17F.[43] She also

6    noted that an August 2018 DSHS evaluation noted anxiety disorder, depressive

7    disorder, and an opioid-related disorder in remission, which she interpreted to be a

8    prescription pain addiction in addition to the methamphetamine use.[44] She stated

9    that the diagnosis of remission was based on self-reports and noted that in her

10   2014 evaluation the examiner, Dr. Marks, did not note that the opioid problem was

11   in remission.[45] Dr. Winfrey said the only evaluation performed in the relevant

12   period was Dr. Marks' August 2018 evaluation at Exhibit 14F.[46] Dr. Winfrey noted

13   that there was no indication of meth use then but that there had been an

14   admission of use in the fall or summer of 2017.[47] When the ALJ clarified that

15   Plaintiff was incarcerated in Fall 2017 through January 2018 and again in summer

16   of 2018, Dr. Winfrey opined that there was an increased likelihood that he was

17

18   [43] AR 49-50.

19   [44] AR 50-51.

20   [45] AR 51.

21   [46] AR 52.

22   [47] AR 52-53.

23

clean and sober during the evaluation.[48] She opined depression and anxiety and ADHD were medically determinable impairments.[49]

Dr. Winfrey opined that in the domain of understand, remember, and apply information Plaintiff had a mild limitation.[50] She opined that with regard to the domain of interacting with others Plaintiff had a moderate limitation without drugs or alcohol.[51] As to the domain of concentrate, persist, and maintain pace, she opined there would be a marked limitation without medication and a moderate limitation with medication.[52] As to the domain of adapting or managing oneself, Dr. Winfrey opined that Plaintiff had a moderate to marked limitation.[53] She said that Plaintiff was easily distracted and should be placed in a predictable environment with little change and no fast-paced work, and have only brief, superficial contact with the public.[54] Dr. Winfrey opined that Plaintiff would not be off-task more than normal if limited to routine, simple tasks with medication.[55]

---

[48] AR 53.

[49] AR 54-55.

[50] AR 54.

[51] *Id.*

[52] AR 55.

[53] *Id.*

[54] AR 56.

[55] AR 57.

1    Plaintiff's counsel pointed out to Dr. Winfrey that Dr. Marks stated in her

2    report that Plaintiff's impairments were not caused by substance abuse and that

3    they would persist if sober for 60 days.[56] Dr. Winfrey agreed.[57] Dr. Winfrey clarified

4    that she was making the assumption that Plaintiff's evaluation by Dr. Marks was

5    conducted while he was clean and sober.[58]

6        3.    Dr. Marks' Report and Opinion

7        On August 17, 2018, N.K. Marks, PhD, examined Plaintiff at the request of

8    the Washington State Department of Social and Health Services (DSHS).[59]

9    Dr. Marks had previously examined Plaintiff at DSHS's request in April 2017.[60]

10   Dr. Marks noted that in 2017 Plaintiff had been diagnosed with anxiety disorder,

11   depressive disorder, ADHD with combined presentation, and an opioid disorder but

12   that he had brought with him a certificate of completion for drug treatment

13   through ABHS.[61] Dr. Marks' report was detailed with the results of a clinical

14   interview detailing psychosocial history, medical and treatment history,

15   educational and work history, substance abuse history, and activities of daily

16

17   [56] AR 58.

18   [57] *Id.*

19   [58] AR 59-60.

20   [59] AR 651-657.

21   [60] AR 570-575.

22   [61] AR 651.

23

1  living; her clinical findings; her opined diagnoses; the results of a mental status

2  examination; a prognosis and treatment plan; additional treatment

3  recommendations; and a medical source statement.[62] Dr. Marks noted that

4  Plaintiff reported that he had lapsed in the fall of 2017 but had attended treatment

5  for 48 days and was currently clean and sober.[63] She noted that he was presently

6  homeless and needed a place to sleep to stabilize his condition.[64]

7       Dr. Marks noted that Plaintiff's score on the Beck Depression Inventory was

8  a 34, which placed him in a severe range of depression and that his score on the

9  Beck Anxiety Inventory was a 16, which placed him in a moderate range for

10  anxiety.[65] Dr. Marks noted that as far as ADHD, Plaintiff was very unfocused and

11  struggled to stay on task, needed things repeated back to him, and his results on

12  the Trail Making Test indicated impulsivity.[66] Dr. Marks diagnosed anxiety

13  disorder, depressive disorder, ADHD with combined presentation, and an opioid

14  disorder in remission.[67]

15

16

17  [62] AR 651-657.

18  [63] AR 652.

19  [64] *Id.*

20  [65] AR 653.

21  [66] AR 654.

22  [67] *Id.*

23

DISPOSITIVE ORDER - 14

On examination, Plaintiff presented showing attempts to look groomed but was wrinkled, as he was homeless; his speech was fairly well organized and he was cooperative but had minimal eye contact; his mood was depressed and anxious; he was agitated; his thinking was confused and showed active symptoms of ADHD; he was oriented and had no delusions; his memory and fund of knowledge were within normal limits; his abstract thought was within normal limits; and his concentration was not within normal limits, as he was distractible during the examination and struggled to maintain focus.[68]

Dr. Marks opined that Plaintiff had a moderate limitation in performing the following work activities: understand, remember, and persist in tasks requiring detailed instructions; perform routine tasks without special supervision; make simple work-related decisions; be aware of hazards; maintain appropriate behavior; complete a normal workday or work week without interruption; and set realistic goals.[69] She opined that Plaintiff would have a moderate to marked limitation in asking simple questions or asking for assistance.[70] She opined that Plaintiff would have a marked limitation in completing the following work activities: perform activities within a schedule, maintain attendance, and be punctual; learn new tasks; adapt to changes in a routine work setting; and communicate effectively in a

---

[68] AR 655-657.

[69] AR 654-655.

[70] AR 654.

DISPOSITIVE ORDER - 15

work setting.[71] She opined that the overall severity of the impairments was severe, and that the impairments were not the result of substance use and would persist following 60 days of sobriety.[72] Dr. Marks recommended vocational training, counseling, assistance with housing, case management, and monitoring for decompensation.[73] She stated that Plaintiff is intelligent and shows promise if he can "get his life together" and that he had a long way to go in staying sober and dealing with his depression and anxiety.[74]

4.  Analysis

The ALJ found Dr. Marks' opinions to be unpersuasive and articulated the following reasoning:

> The undersigned finds the opinions of Nora Marks, Ph.D., in an April 2017 and August 2018 psychological examination unpersuasive (6F; 14F). These opinions are also checkbox forms with little meaningful explanation, and both occurred before the relevant period. The exams also took place when the claimant was admittedly using opioids and methamphetamine, and it accordingly does not reflect his functioning since attaining sobriety in late 2018. In addition, Dr. Marks' opinion is inconsistent with her own mental status findings and the record as a whole. Notably, an evaluator at the Department of Social and Health Services (DSHS) concluded Dr. Marks' opinion was not supported by her own exam (6F/13). Her opinion is also inconsistent with the assessments of the psychologists at the state agency level of disability

---

[71] *Id.*

[72] AR 655.

[73] *Id.*

[74] *Id.*

determination and Dr. Winfrey, both of whom had the benefit of reviewing more of the record.[75]

Initially, the Court notes that the Commissioner's argument that Dr. Marks' opinion was rendered before the relevant period is error. Dr. Marks' August 2018 examination of Plaintiff took place only several months prior to the relevant period, which begins October 17, 2018. Moreover, the Commissioner is offering a reason to justify the ALJ's decision that the ALJ herself never articulated.

The Court will address each of the four reasons given by the ALJ to find the opinions unpersuasive: that it was rendered on a check-box form; that it was based on an examination performed during a time that Plaintiff was using opioids; that Dr. Marks' opinions are inconsistent with her own findings and the record as a whole; and that it is inconsistent with the opinions of Dr. Whitney and the state agency evaluators who had an opportunity to review the record.

First, the Court notes that while portions of Dr. Marks' report were rendered in a check-box format, it is a gross mischaracterization to call Dr. Marks' report "a check-box form." Indeed, it is a seven-page report that contains a thorough and detailed narrative regarding psychosocial history, medical and treatment history, educational and work history, substance abuse history, and activities of daily living.[76] Dr. Marks indicated that she administered three separate tests to Plaintiff

---

[75] AR 694.

[76] AR 651-657.

in addition to conducting a mental status examination: the Becks Depression

Inventory, the Becks Anxiety Inventory, and the Trail Making Test, parts A and

B.[77] She explained the symptoms for which she based her diagnosis and with

regard to her diagnosis of ADHD she stated:

> **Previously**: Very unfocused, struggled to stay on task. He needed things repeated back multiple times. He forgot portions of directions. On the Trail Making Test, he completed Part A in 20 minutes with one error and Part B in 37 minutes with 2 errors. His results place him in the average range in terms of completion times but his number of errors do suggest a certain amount of impulsivity.
>
> **Current:** He is now on meds for ADHD and was much more focused today but still has considerable difficulty with organization He is getting better but stable housing would help considerably.[78]

While the Court is aware that in some instances it is appropriate to limit the

persuasiveness of opinions rendered on fill-in forms that offer little narrative and

explanation, the Court concludes that this is not an accurate description of

Dr. Marks' report.

Additionally, the Court finds no support for the statement made by the ALJ

and repeated by the Commissioner that Dr. Marks examined Plaintiff when he was

"admittedly using opioids and methamphetamines."[79] To the contrary, Plaintiff

presented to Dr. Marks with proof that he had completed a drug program in

---

[77] AR 653-654.

[78] AR 654.

[79] AR 694.

DISPOSITIVE ORDER - 18

1   January 2018, eight months prior to the examination.[80] Dr. Marks stated that

2   Plaintiff's substance use was "[i]n remission. He completed treatment and is still

3   clean and sober."[81] Dr. Winfrey agreed that there was a presumption that the

4   examination took place when Plaintiff was clean and sober.[82]

5          The ALJ's reasoning as to the supportability and consistency of Dr. Marks'

6   opinions is wholly deficient.  Her articulated reasoning is conclusory at best and

7   merely states:

8          In addition, Dr. Marks' opinion is inconsistent with her own mental
           status findings and the record as a whole. Notably, an evaluator at the
9          Department of Social and Health Services (DSHS) concluded
           Dr. Marks' opinion was not supported by her own exam (6F/13).[83]

10

11         Lastly, the ALJ 's reasoning that Dr. Winfrey and the state agency

12  evaluators had a chance to review the record fails to consider that they did not

13  have an opportunity to examine Plaintiff, as Dr. Marks did.

14         The ALJ must articulate her findings and cite to supporting evidence in a

15  way that permits the Court to meaningfully review the ALJ's findings.[84]  While an

16

17  _____

    [80] AR 651.

18
    [81] AR 654.

19
    [82] AR 59-60.

20
    [83] AR 694.

21
    [84] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849

22  F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence

23

                                                    DISPOSITIVE ORDER - 19

1    ALJ need not address every piece of evidence, an ALJ "may not ignore significant

2    probative evidence that bears on the disability analysis."[85]  Here, the ALJ failed to

3    do so.  The Court concludes that remand is warranted for the ALJ to properly

4    consider Dr. Marks' opinions and to evaluate the record as a whole and to more

5    meaningfully articulate the findings.

6         5.    Summary

7         Because the ALJ did not give valid reasons for her evaluation of the medical

8    opinions of Dr. Marks, a remand is warranted.

9    **B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

10        Plaintiff argues the ALJ failed to properly assess his subjective complaints.

11   As discussed above, the ALJ failed to consider the medical record as a whole when

12   considering the medical opinions.  Because the Court has remanded the case for

13   consideration of the record as a whole, the ALJ will be required to consider the

14   credibility of Plaintiff's subjective complaints.

15

16

17   _____

18   supporting the found conflict to permit the court to meaningfully review the ALJ's

     finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the

19   ALJ to build an accurate and logical bridge from the evidence to her conclusions so

20   that we may afford the claimant meaningful review of the SSA's ultimate

21   findings.").

22   [85] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

23

1

**C.    Step Five Evaluation: Plaintiff fails to establish consequential error.**

2        Because the ALJ erred in her evaluation of the medical opinions, the Court

3   will only briefly address this issue.  In his brief, Plaintiff argues that the ALJ erred

4   at step five because she asked the VE if an individual performing the job of router

5   or small product assembler would "be required to spend a significant amount of

6   time raising or suspending his arms" but changed the wording in her decision to

7   "occasionally raise or suspend arms."[86]

8        Plaintiff is correct that the ALJ posed a question to the VE of whether the

9   person performing those two jobs would be required to "spend a significant amount

10  of time raising or suspending his arms."[87]  However, Plaintiff fails to consider the

11  statement in its proper context.

12       The following exchange took place between the ALJ and the VE:

13   ALJ: So, what the District Court said was, quote, common
     experience indicates that an occupation in which a person stands or
14   sits on a stool and reaches out to a conveyor belt to sort apples
     involves a significant amount of raising and/or suspending of the
15   arms as compared to typing on a keyboard or answering a telephone
     from a seated position which generally involves minimal shoulder
16   movement.

17   When answering the ALJ's follow-up question about the keyboard
     and phone tasks, Dr. Ghazi did not deviate from his earlier testimony
18   that plaintiff was limited to occasionally lifting his arms to reach out
     in front of his body between waist and shoulder level.  That is not
19   actually what the doctor said.  Counsel asked him, as I said, about

20

21   [86] ECF No. 6, p. 11-12, quoting AR 689, 712

22   [87] AR 712.

23

DISPOSITIVE ORDER - 21

reaching on a conveyor belt and the doctor said, well he's basically limited to waist level.

So, with that background now, Mr. Stutz, I'm going to ask you with regards to these jobs that you gave me, the router, the marker and the assembly small products I, would the individual performing that job be required to spend a significant amount of time raising or suspending his arms as compared to typing on a keyboard or answering a telephone?

VE: No, none of those jobs. The marker – let me work on the marker for just a second.

VE: So, the marker there would be more outreach, yes. The marker would move up and you would be between the waist and shoulder but not above shoulder. The other jobs, no.

ALJ: And would that happen on a more than an occasional basis?

VE: I think I would like to say, yes, it would on the marker...[88]

When read in the proper context it is clear that the ALJ advised the VE that Dr. Ghazi opined that Plaintiff was limited to no more than occasional reaching between the waist and shoulder. It is also clear that the VE testified that the jobs of small product assembler and router would involve only occasional reaching but the job of marker, which he replaced with the alternate job of electrical accessories assembler would require frequent reaching. It is reasonably clear that all three of the jobs ultimately provided by the VE and cited in the ALJ's decision were able to be performed with no more than occasional reaching between the waist and

---

[88] AR 711-712.

DISPOSITIVE ORDER - 22

shoulders.  For that reason, the Court concludes this issue need not be addressed on remand.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[89] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[90]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC with proper consideration of Dr. Marks' opinions. Therefore, the ALJ should properly consider the opinion evidence and make findings at each of the five steps of the sequential evaluation process.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

---

[89] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[90] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

DISPOSITIVE ORDER - 23

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is

**REMANDED** to the Commissioner of Social Security for further

proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and**

**10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and

provide copies to all counsel.

DATED this 9th day of January 2025.

_____
EDWARD F. SHEA
Senior United States District Judge